[No. A061769. First Dist., Div. Four. Apr. 21, 1994.]

CITY AND COUNTY OF SAN FRANCISCO, Plaintiff and Appellant, v. MARK STANLEY, Defendant and Respondent.

COUNSEL

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Appellant.

Kadushin, Fancher & Wickland and Paige Wickland for Defendant and Respondent.

OPINION

POCHÉ, J.—Plaintiff, City and County of San Francisco (city), appeals from an order modifying the amount of child support and ordering blood tests of the child, her mother and defendant, Mark Stanley.

In January of 1987 the city brought a complaint for child support, reimbursement of public assistance, and establishment of paternity against Mark Stanley (Stanley) on behalf of a little girl born in October 1985. Stanley, who was represented by counsel, answered the complaint asserting as an affirmative defense that another man was listed as the child's father on the birth certificate, that the mother had refused to communicate with him about the child and that he lacked information to know whether the child was his daughter. Once the district attorney moved for temporary support, the parties entered into a stipulation for paternity blood testing. That testing was apparently never done.

In early May 1988 Stanley substituted himself in propria persona for his counsel. At a hearing later in the month Stanley stipulated to being the parent of the little girl. An order issued establishing his paternity and directing him to pay child support in the amount of $140 monthly to the city.

In February 1993 the district attorney moved on Stanley's behalf to modify the order on the grounds that "claimant's income has substantially decreased since the date of the existing order." At the hearing on the motion, Stanley, representing himself asked the court to order blood testing of the

child in order to verify his paternity. He was separated from his present wife who was unwilling to reconcile without verification that the little girl was indeed Stanley's daughter.

Counsel for the city vigorously opposed the testing, and asked the court if it would also order testing of the man who was listed on the birth certificate as the father. The court granted the testing request, but limited it to "these people [the mother, child and Stanley] under the authority of the court and the jurisdiction of the court." Stanley then stipulated to increased support of $204 a month. The city took a timely appeal from that portion of the order calling for blood testing.

## DISCUSSION

■ As an initial matter defendant contends that the order appealed from is nonappealable. He is wrong. The order from which the city appeals is a postjudgment order modifying child support. (Code Civ. Proc., § 904.1, subd. (a)(2); *County of Los Angeles* v. *Patrick* (1992) 11 Cal.App.4th 1246, 1250 [14 Cal.Rptr.2d 665] [city appeals from order modifying amount of child support awarded in Aid to Families With Dependent Children recoupment].)

An action by the county may be brought on behalf of a minor child solely to determine paternity and child support. (Welf. & Inst. Code, § 11350.1.) The issues in such actions are "limited strictly to the question of paternity . . . and child support." (Welf. & Inst. Code, § 11350.1, subd. (a).) "A final determination of parentage may be made in any action under this section as an incident to obtaining an order for support." (Welf. & Inst. Code, § 11350.1, subd. (a).) Such an action was brought by the city on behalf of the minor in 1987. A final judgment was entered June 24, 1988, based upon a stipulation between the parties, finding Stanley to be the father of the child, and ordering him to pay child support for her, "[b]ased on the income evidence presented at the hearing."

Stanley moved to modify the support order in February 1993 on the grounds contained in the form pleading that his "income has substantially decreased since the date of the existing order." Thus, the asserted ground for making the motion to modify was the changed circumstance of Stanley's ability to pay. ■ Child support orders are subject to modification upon a showing of a material change of circumstances. (*In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 548 [251 Cal.Rptr. 370].)

■ At the hearing on the motion to modify support, however, the commissioner expanded the scope of the order to include the question of

blood testing. The city asserts that the request for blood testing was untimely on the basis that Evidence Code former section 892 (now Fam. Code, § 7551) permits such testing where paternity is an issue unless to permit the testing will unduly delay the proceeding. The testing question here was well beyond being one of untimeliness. At the time the challenged blood testing was ordered paternity had long since been determined.

In the original proceeding by a document dated December 16, 1987, made while Stanley was represented by counsel, the parties stipulated to blood testing of Stanley, the mother and the child "to the end that the tests will be completed within 60 days of the date of this order," absent a written extension.[1] Stanley did not participate in the testing he had agreed to, and some six months later in June of 1988 he stipulated to paternity.

"The judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes . . . ." (Fam. Code, § 7636.) ■ Therefore, "[a] judgment of paternity, even if taken by default, is res judicata in any subsequent civil enforcement proceeding." (*County of Los Angeles* v. *Soto* (1984) 35 Cal.3d 483, 488 [198 Cal.Rptr. 779, 674 P.2d 750].)

Notwithstanding the finality which is imputed to paternity determinations, there are a limited number of situations in which a judgment stemming from a Welfare and Institutions Code section 11350.1 hearing may be attacked. A parent who signed an agreement for entry of judgment may make a successful collateral attack on a final judgment of paternity if the parent acts promptly and can demonstrate both that he or she was not told of his or her right to trial and that he or she was unaware of that right and would not otherwise have executed the agreement. (*County of Los Angeles* v. *Soto, supra,* 35 Cal.3d at p. 486.) A parent can challenge the support order which issued from a Welfare and Institutions Code section 11350.1 hearing by bringing his or her own Family Code action. (Welf. & Inst. Code, § 11350.1, subd. (b);[2] see also *Monterey County* v. *Cornejo* (1991) 53 Cal.3d 1271, 1283-1284 [283 Cal.Rptr. 405, 812 P.2d 586] [parent can relitigate in a family law action question of entitlement to dependent tax exemption].)

---

[1]No such written extension is in the record before us. Stanley's suggestion that the stipulation was to blood testing at any time up to and including 1993 when the motion to modify was brought is completely inconsistent with the text of the document which is before us.

[2]"Nothing contained in this section shall be construed to prevent the parties from bringing an independent action under the Family Code or otherwise, and litigating the issue of support. In that event, the court in those proceedings shall make an independent determination on the issue of support which shall supersede the support order made pursuant to this section." (Welf. & Inst. Code, § 11350.1, subd. (b).)

██ ▬█ ██ We have found no authority, and Stanley offers none, for the proposition that a parent may use a motion to modify child support as a vehicle to reopen the issue of paternity once a final judgment of paternity has been rendered.[3] Indeed, the only authority on the subject holds to the contrary. In *De Weese* v. *Unick* (1980) 102 Cal.App.3d 100, 104-106 [162 Cal.Rptr. 259], a father's motion for blood testing with a newly developed test made in response to a motion for modification of support was properly denied where the four-year-old finding of paternity was res judicata on the question of paternity. Since the only conceivable relevance that blood testing could have in this case is to whether or not Stanley is in fact the biological father, the court abused its discretion in ordering blood testing where the issue of paternity was already determined.

The commissioner made this ruling out of a laudable motive, noting "I also believe . . . that it is still in the best interest of the children to know their biological history for their own future and I think that it's important for children to have that knowledge." Here, of course, it is not the child who is seeking to verify who her biological father is. We express no opinion as to whether the child, should she wish to do so, could reopen the issue of her paternity.

### DISPOSITION

The order filed May 11, 1993, is reversed only insofar as it directs the custodial parent and the minor child to submit to blood testing.

Anderson, P. J., and Reardon, J., concurred.

---

[3]Stanley argues that his stipulation to paternity is, in any event, voidable and thus should not bar the testing order. Such a judgment is voidable if a parent who was unrepresented by counsel can establish that he was not advised by the district attorney of his right to trial and that he was unaware of such rights and would not otherwise have executed the agreement. (*County of Alameda* v. *Mosier* (1984) 154 Cal.App.3d 757, 759 [201 Cal.Rptr. 550]; see also *County of Los Angeles* v. *Castro* (1984) 160 Cal.App.3d 899, 902-904 [207 Cal.Rptr. 15].) Mr. Stanley was not by this motion, as he himself concedes, attempting to set aside the judgment of paternity and did not even attempt to make either of the required evidentiary showings.